The 4th District Appellate Court of the state of Illinois has now convened the Honorable Thomas M. Harris presiding. All right. Good morning, everyone. We're here on case number 4-22-0278 People v. Jermaine Davis. Counsel for the appellant. Could you please state your name for the record? Natalia Galitza with the Office of the State Appellate Defender. Thank you. And counsel for the appellate. Please state your name for the record. James Ryan Williams with the Appellate Prosecutors. All right. Thank you both. Ms. Galitza, you may proceed with your argument. May it please the court, counsel. My name is Natalia Galitza with the Office of the State Appellate Defender and I represent Jermaine Davis in this matter. Mr. Davis has established the gist of a constitutional claim in his initial post-conviction petition, which was dismissed at the first stage. He did this first by alleging that counsel was ineffective when he failed to investigate the defense of insanity. Looking at his post-conviction petition in the record beginning on page 992, Davis specifically noted that days before the murders, he was admitted into St. John's Hospital and Memorial psych floors because he was complaining of hallucinations, both auditory and visual, telling him to kill people and seeing people bleeding and babies crying. He noted that he provided counsel with documentation of this hospitalization after he filed a FOIA request. That was the same information that was later conveyed in the pre-sentence investigation report. Davis alleged that counsel told him that the information was not enough and that it would be too much work. He wrote that where counsel declined to pursue a defense, he settled for no defense and counsel did not, among other things, prepare a defense and prepare for trial. He also cited counsel. Excuse me. Good morning. I have a question regarding this point. You mentioned that this information was in the pre-sentence report. His attorney did not have that prior to that time. Isn't that correct? So how could he have performed ineffectively if he didn't have the information? Your Honor, it is correct that the information was in the pre-sentence investigation report. However, Mr. Davis explains that before trial, in preparation for trial, he filed a FOIA request detailing the hospitalization and gave it to his attorney. Therefore, his attorney should have known that he was hospitalized before the pre-sentence investigation report was filed. In fact, Mr. Davis also explains in his post-conviction petition that counsel declined to pursue defense and declined to prepare for trial. This indicates that that information was explained to the attorney before the trial ever occurred. Mr. Davis also cited to Antwine v. Velo, a case that involved counsel's failure to investigate an insanity defense, to see if that defendant was suffering from a bipolar episode on the day of that offense. Mr. Davis's allegations are not rebutted by the record. Accepting his allegations is true, as is required in the first stage of post-conviction proceedings. It is clear that Mr. Davis has established the gist of a constitutional claim by demonstrating that counsel was at least arguably ineffective because counsel has an obligation to independently investigate any possible defenses, according to the Illinois Supreme Court and People v. Damagalla. The defense of insanity is appropriate where there is a mental disease or subject that diminishes a person's ability to appreciate the criminality of his conduct. And the U.S. Supreme Court explained in Ake v. Oklahoma that without a psychiatrist's assistance to determine whether the defense is viable, the risk of an inaccurate resolution is incredibly high. So the question here is whether reasonable counsel would have investigated that defense. Here, we know that there was some evidence of a mental disease. Davis wrote that days before the murders, he was hospitalized. He has a long history of mental health illnesses, and he was hallucinating, disturbing images and voices telling him to kill people. We know that counsel did not file anything with the court asking for a mental health evaluation. And we also know that based on Davis's petition, he told his attorney about this mental health history and provided counsel with those records. But counsel told him that it would be too much work and declined to pursue a defense. We can infer that these conversations happened before trial because Davis characterized counsel's actions as a lack of trial preparation. All these facts support Davis's allegations that counsel did not investigate the defense of insanity, but that reasonable counsel should have. We also know from Ake that counsel cannot make the determination that Davis was suffering from an episode during the homicide on his own. He needs a psychiatrist, a psychiatric expert. So reasonable counsel should have at least consulted with an expert, and there's no evidence that counsel did so in this case. Because counsel did not investigate the possible defense of insanity, counsel was not objectively reasonable. Therefore, the first prong of the Strickland standard is satisfied. The second prong of the Strickland standard is also satisfied because Davis was arguably prejudiced by counsel's failure to investigate. This is because if Davis had raised the defense of insanity, he may have been found not culpable for the crime. But the only way to know whether Davis was criminally insane at the time of the offense was for counsel to investigate that claim, which counsel failed to do. Because both prongs of the Strickland standard are satisfied, Davis has alleged the gist of a constitutional claim and has met the standard required at the first stage of post-conviction proceedings. Additionally, Jermaine Davis further alleged that counsel was ineffective for failing to present evidence during the hearing on the motion to suppress of a booking folder with the words, do not allow phone access. This claim is significant because Davis stated that he asked county jail officers to use the phone to call family, friends, and to try and help with an attorney due to earlier requesting one and not receiving one during police questioning. This was on the record on page 980. In his petition, Davis alleged that counsel failed to present evidence of the folder and the violation of his communication rights under section 725 ILCS 5-103-3. Ms. Gillespie, may I interrupt you for a moment? And just on this particular issue, the state has pointed out that your client during a particular point in pretrial proceedings proceeded pro se and therefore cannot claim ineffective assistance of counsel because he himself was representing himself during that particular period and he could have raised this particular claim. So what's your response to that? To be clear, Your Honor, the motion to suppress hearing happened in April 2016. He filed a motion to proceed pro se in June of 2016 and filed a motion for rehearing on the motion to suppress in July of 2016. In a motion for rehearing, he is not able to present new evidence that counsel had not presented before. Is that truly what happened here, though? I know that's how it was designated as a motion for rehearing, but did the trial court treat it as such? It seems that the state actually presented evidence during this subsequent hearing. So can we technically call it a petition for rehearing? Your Honor, yes, because there's no evidence that the court was considering new information that it was allowing Mr. Davis to present evidence that was not previously presented to the court. The court was just allowing Mr. Davis to proceed on his motion for a rehearing to determine whether the motion to suppress should have been allowed. What did he do at that hearing? Your Honor, Mr. Davis, if I may have a moment. Was he able to speak to the court and express his views and make a coherent argument? Yes, Your Honor. He was given an opportunity to do so at the hearing, but there's no evidence that he was ever able to bring in new witnesses to bring in new evidence. Was he coherent? He was coherent. Yes, Your Honor. Why does that inform us on the claim that he was crazy, but in the Sanity Defense would have worked or conceivably worked for the crimes he was charged with committing a few months earlier? Your Honor, the hearing was not a few months after he was charged. The homicides happened in 2012, December 2012, and this hearing happened in 2016. Insanity, of course, is related to his mental state at the time of the offense and not at a period after the offense, such as during trial. So his behavior while he was preparing for trial, while he was appearing before the court, may not be the same behavior that he was exhibiting in December 2012. In fact, we know from his present investigation report that he was involuntarily committed to the hospital because of those hallucinations. And because this is the first stage of post-conviction proceedings, we must accept all facts as true unless they are positively rebutted by the record. There's no evidence that he was lying about the hallucinations or that he was not insane at the time of the murders. Therefore, his habits during the trial and during this motion to suppress re-hearing do not inform us as to his insanity at the time of the offense. So psychiatrists should have been called on to examine him and determine whether he was insane four years earlier when he committed these offenses? I'm sorry, Your Honor. The first part of your question was cut off. Repeat that? Your claim is that the counsel should have gotten a psychiatrist to examine the defendant to determine whether years earlier when he committed these offenses, he had an insanity claim? Your Honor, either trial counsel should have brought in a new expert to investigate that or ask the psychiatrist to examine him at St. Johnson Memorial Hospital. Either of those methods would be fine. However, in the post-conviction petition, Davis states that his counsel did not do any of that, that he said it would be too much work and that is not rebutted by the record. So therefore, there's no evidence that counsel did indeed pursue a claim of insanity. Regarding the phone access, had counsel presented the evidence of the booking folder and Jermaine Davis's lack of access to a phone during the motion to suppress hearing initially, it is arguable that the trial court would have suppressed the statements made. But counsel, he had not made that, that didn't apply to the February 7th questioning, did it? No, Your Honor. The booking folder was after he was already arrested and held in detention. But this court's decision in his direct appeal kind of informs that. This court noted that his statements on February 7th and 8th, while they may have been suppressed, it is the February 10th statements that were really important to this case. And if after he was held in detention without having access to a phone, without having access to his family, who may have called an attorney, that could have led to due process violation, inducing him to make that statement on February 10th. And that is what he alleges in his post-conviction petition. And indeed, this case is analogous to Haines, which is another Supreme Court case. In that case, the Supreme Court ruled that the defendant's due process rights were violated and that he may have been coerced into confessing because he was repeatedly denied access to phone calls. And that's why we have the statute, Section 725 ILCS 5-103-3, in order to protect a defendant's rights to call his family so that he may obtain access to an attorney through them. Trial counsel should have presented that evidence of his statutory and due process violations during the hearing because it would have demonstrated the coercive conditions that Davis was subject to at that time, leading up to the February 10th confession. Because it is at least arguable that a motion to suppress Davis's statements would have been meritorious based on the due process violation. Trial counsel's failure to present that evidence was arguably unreasonable. And trial counsel's objectively unreasonable performance also arguably resulted in prejudice. Davis's statement was of primary importance to the state's case, particularly where no DNA or fingerprints linked Davis to the offense. And where the state's other witnesses were not particularly credible and had other motives to lie, either based on their own criminal history or their involvement in this crime. Had counsel presented evidence about the statutory and due process violation, it is possible that the court would have suppressed Davis's statement. Additionally, appellate counsel was unable to pursue this claim on direct appeal because the booking folder and Davis's statement that he was attempting to call family and counsel were outside of the record. If, however, this court finds that counsel properly preserved Davis's due process claim with the written motion to suppress, then appellate counsel was ineffective for not raising this due process issue on direct appeal in accordance with the claim that Davis raised later in his post-conviction petition on page 1016. Objectively reasonable counsel would have noted the due process and statutory violations stemming from Davis's detention on February 7th to February 10th. The conditions leading up to the February 10th statements would have been critical to this court's analysis on direct appeal. As a result, appellate counsel was arguably ineffective for failing to challenge the trial court's denial of the motion on direct appeal based on the due process and statutory violations. Counsel, going back to the insanity defense, the definition of insanity is set forth in the statute as a person who is not criminally responsible for conduct. If at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct. And then the statute goes on to explain that mental disease or mental defect does not include abnormality manifested only by repeated criminal activity or otherwise antisocial conduct. What was there before his lawyer that would, who is working with the defendant on this case? I know this is not a question of fitness to stand trial where the issue is, is he unable to work with his counsel and understand the nature of the charge against him. Counsel is working with the defendant and what is there that would lead the attorney to think that based on what he knew, the defendant lacked substantial capacity to appreciate the criminality of his conduct. Namely, example would be that when he killed these people, he thought he was peeling a cabbage would be the kind of lack of substantial capacity. What is there before, and especially it's going back to where he's going pro se and apparently the court permitted him to do it. And he did it reasonably well as pro se defendants go. So what about all of that? How does that help to inform what was before the trial counsel and why he should have thought an insanity defense had any possible merit at all? Well, your honor, based on the post conviction petition, Davis told him about his long history of mental health issues and his recent to the murders hospitalization for hallucinations. Right there. We, you know, the statute makes clear in the case law makes clear that having mental health issues isn't even presumptive meeting the criteria for being able to claim an insanity defense. Your honor, the hallucinations indicated that counsel should have at least investigated this. Again, counsel has an obligation to independently investigate any possible defenses. He's talking to his client and his client doesn't appear crazy. And in fact, if I were the trial judge and I hear this guy making this argument in front of me, I'm going pro se. That would be one more indication that this guy doesn't sound crazy to me. What about that? Your honor, again, at the time of the trial, at the time that he was talking to counsel, that is not the time of the offense. And what really matters is his mental state at the time of the offense. And the only people who can really shed light on that are psychiatric experts who are able to give an informed decision about his mental state. Well, the question of prejudice also applies because to show ineffective assistance of counsel, it's his burden to show he was prejudiced by this. And the other aspect of this is the statute requires that when the defendant asserts the insanity defense, he has the burden of proof. So we have two different burdens placed on the defendant that he'd have to make here. A burden of proof that the insanity and then a burden that he was prejudiced because maybe that's what the jury would have found had this issue gone to trial. And it seems to me based on what little there is before this, there's not much basis to think that either of those would prevail. Your honor, at this stage, this is a very low threshold and we are looking at whether there's arguable prejudice. There may have been little evidence before counsel because counsel arguably did not investigate this claim at all. If he had, then your honor, I see that my time is up. May I answer your question? You may. Had counsel investigated this claim, then arguably the jury would have also found that Davis was insane. But there's no way to know that because counsel did not meet his obligation. And therefore, we ask this court to reverse the decision of the trial court. Thank you. All right. Thank you, Ms. Glaser. Mr. Williams, argument please. May it please the court, counsel. My name is James Ryan Williams and it is my privilege to represent the state before this honorable court. So in this matter, the trial court here properly concluded that the defendants insanity defense argument was forfeited and otherwise frivolous. The argument itself is predicated on information in the pre-sentence investigation report that the defendant had been admitted to the hospital prior to the murders. Now, that information was in the direct appeal record, as of course was the fact that this defense was not raised. So if ineffective assistance can now be established based on information in the pre-sentence investigation report, then obviously it could have been in the direct appeal. So the what about Miss Galicia's claim that the defendant told this to his lawyer before it appeared in the PSI? My reading of the post-conviction petition is that the way that the way that this was explained by the defendant was that he gave his lawyer the same information that was provided to the pre-sentence investigators. The information that was provided to the pre-sentence investigators was pursuant to a request for release of medical records. So the state's position on this matter, on that issue, is that based on his allegations, the logical conclusion is that that information was not even provided. So counsel was not even provided until subsequent to the conviction. So counsel could not have performed efficiently by failing to pursue a defense that was based on information that was not yet before counsel. Go ahead. But are you saying, counsel, that he wasn't informed or he didn't inform his attorney that there was an involuntary hospitalization? I mean, that should have been a signal right away. Again, my reading of the post-conviction petition is that this information that was provided to his defense attorney was the same information that was provided to the pre-sentence investigators. So the point is that that information wasn't provided until subsequent to the arrest. So you're saying all he did was tell his attorney that there were medical records requested? Medical records, nothing more specific than that? My reading of the post-conviction petition is that the defendant here did not even allege that he advised counsel of these issues before trial. That's not specifically alleged. And then the logical deduction, in my view, from the way that he specifically states his allegations is that he gave counsel the same information that was provided to the pre-sentence investigators. So again, without a specific allegation that he provided this in advance of trial, and then with the only specific allegation, I'll point that it was the same information that the pre-sentence investigators received pursuant to this release of medical records request. The logical conclusion is that counsel was only privy to these records subsequent to the conviction. And of course, couldn't have performed efficiently by not pursuing a defense that was based on information that he did not have at the time when he would have been pursuing a defense. I would also note that the only real new information with respect to this claim is what I would argue is a fanciful and inherently unbelievable claim that in a double murder case where the client is facing life in prison, that an attorney would candidly admit to that client that he was not pursuing a defense simply because it was too much work. I would submit that that falls squarely in the arena of a fanciful allegation. But pausing right there, you may be correct that that's not worthy of belief, but given the circumstances of this being a first stage hearing on a post-conviction petition, isn't this court prohibited from making credibility assessments of that sort? Well, I mean, yes, you know, you take the allegations as true unless they are. I can't remember the exact standard off the top of my head, but basically fanciful allegations do not necessarily have to be taken as true. Well, but, you know, fanciful allegations would be if the defendant said that Martians advised his lawyers to take certain steps and that was unwatched. That would be pretty fanciful, but here what we're talking about is something that appears unlikely. I share your skepticism, but I don't know that we can make a determination. We can't make credibility calls at this stage. Well, I mean, you know, fair enough on that point. The state's position is that that's just simply inherently unbelievable that an attorney would say, listen, you're facing life, but this is simply too much work. I'm not going to pursue this defense. It – that's all I can say. That's an inherently unbelievable claim. You know, finally, on this point, I would also note that the defendant here doesn't even allege that he was actually insane at the time of the murders. He simply alleges that he was admitted to the hospital, and, of course, there's a substantial difference between suffering from a mental illness and being legally insane at the time of the murder. So here we don't even have – again, my reading of the record is – my reading of the petition is we don't even have a claim that he brought this – brought these issues to counsel's attention in advance of trial, nor do we have a claim that he was insane at the time of the defense. So he's not only forfeited this argument, but it's otherwise frivolous and patently without merit because it has no arguable basis in fact or law. Now – Counsel, if we were to turn to the second point, that is the voluntariness of the defendant's statement that he gave on February 14th – excuse me – the provisions we know of 103.3a were in effect, and the right to communicate certainly was relevant. And I don't think there's any debate, is there, about law enforcement's failure to comply with this provision. Do you agree? With respect to providing him phone access? Correct. I mean, it seemed to me that that was a matter that was fairly fully and completely investigated in the motion to suppress hearing. It was something that this court referenced in its direct appeal decision. So, I mean – Well, there's an affidavit from one of the law enforcement officers who indicated that, indeed, the note was there on the jail cell. Isn't that correct? There's an affidavit attached. I believe that's true. Okay. And certainly, this is one very important factor in looking at the totality of circumstances, certainly with respect to the voluntariness of the statement. Correct? Yeah. Again, Your Honor, on that point, I would just – the State's position here is that the limited phone access was something that was, you know, thoroughly discussed below. It was before this court in the direct appeal. And this booking folder evidence was essentially just cumulative evidence of that fact. Mr. Williams, may I interrupt you? In terms of this having been discussed on direct appeal, I think that was only in regards to the phone access during the February 7th interview. That was pre-arrest, right? Yes, Your Honor. That then wouldn't bring into play the statute that Justice Zinoff referenced. Well, I mean, on that point, what I would also point out is that, you know, as was discussed earlier, the defendant here did represent himself on the motion to reconsider for rehearing of the trial court's – excuse me – of the trial court's denial of the motion to suppress. And the – again, there's a bit of a logical deduction here. So in the post-conviction petition, the evidence that was attached said – it said, quote, per Sergeant Von Buren, no phone access until Monday, February 10th – or excuse me, until Monday. And to be clear, Monday was February 10th that year. Now, the defendant, he represented himself on this motion to reconsider or rehearing on the suppression decision. And in doing so, he specifically argued that Sergeant Von Buren denied him phone access until February 10th. So this allegedly critical booking folder information was already in his possession, and yet he failed to introduce it. And so he's essentially arguing here that his attorney was ineffective for failing to introduce the very same piece of evidence that he himself failed to introduce when making the same argument based on the same evidence. So the state's position is, is that because he represented himself in this manner and in that way, he should be prohibited from claiming his attorney's ineffectiveness for failing to do the very same thing that he did. Excuse me again for interrupting. Ms. Galisa, when I asked her about that same issue, she said this was a motion to reconsider – or a motion for rehearing. And the defendant did not have the ability to present any additional evidence at that time. What do you say to that? Well, on that point, my recollection of the – of his interactions with the court at that time was that he – this issue was, like, legitimately, you know, litigated and addressed below. So I don't think that there – I don't believe that there would have been anything prohibiting him from introducing additional evidence. I mean, the other thing I would point out is that in this – with respect to this particular issue, I did not see any allegation of prejudice in the post-conviction petition, which would presumably be fatal to the argument because he doesn't even allege that he was prejudiced by this failure. And then I guess just – well, you know, I guess unless the court has – there was another argument that was made here that hasn't been discussed today about the 90-day, you know, automatically advance, and unless the court has any questions about that. All right. Well, thank you. Thank you for your time, Your Honors. Okay. Thank you, Mr. Williams. Ms. Galisa, do you have a rebuttal argument? Yes, Your Honor. I have four points on rebuttal. First, counsel argued that the information provided to counsel was provided in the present investigation report. However, the post-conviction petition – and I'm reading from page 993 – states that he was providing counsel with documentation obtained via Freedom of Information Act from St. John and Memorial Hospital. The same information was provided to pre-sentence investigators who reported and confirmed this information. That statement by him indicates that he provided counsel with information that was later confirmed by pre-sentence investigation. Then he also states that there was no trial preparation. Logically, trial preparation cannot occur after trial. Therefore, he has indicated, when we liberally construe his petition as is required under this first-stage standard, that he told counsel about these allegations before the trial occurred. Next, counsel's claim that this is inherently unbelievable is not relevant. Here, we are to take all facts as true unless they are positively rebutted by the record. Indeed, the fact that it's inherently unbelievable and the fact that we have this statement that counsel did not prepare a defense indicates that counsel was objectively unreasonable. Or, arguably, objectively unreasonable, which supports the allegations. As to the booking folder, counsel stated that it was merely cumulative. But, as Justice Harris noted, the information on direct appeal focused on the phone access during the February 7th interview and not about the booking folder or his access while he was in detention. And, if, indeed, this information was presented to the trial court and fully litigated below, then this just goes to Mr. Davis' claim that there was ineffective assistance of appellate counsel. And, finally, as to the precious aspect, Mr. Davis' post-conviction petition must be liberally construed. Pro se defendants are not required to make fully legally cognizable arguments. He argued that he was being held incommunicado from page 1017 and that his will was overborne during the confessions. He also noted that he presented his counsel with the evidence of the folder in his pretrial motion to suppress, which violated his communication rights. This indicates, based on a liberal construction, that there was some prejudice regarding the motion to suppress. And, therefore, we ask this court to reverse the decision of the court below. Thank you. All right. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision shall issue.